UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CIVIL ACTION NO. 05-52

ANTHONY MAYES and
MILDRED MAYES,                                              PLAINTIFFS,

v.                              **OPINION AND ORDER**

KENTUCKY STATE POLICE,
CAPTAIN STEPHEN HUMPHREYS,
Individually, severally and jointly,                        DEFENDANTS.

**\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\***

This matter is before the Court on the Motion for Summary Judgment (Rec. No. 25) filed by the Defendants the Kentucky State Police (the "KSP") and former Kentucky State Police Captain Stephen Humphreys in his individual capacity; and the Motion to Join Party Defendants (Rec. No. 45) filed by the Plaintiffs.  For the following reasons, the Court will GRANT the Defendants' Motion for Summary Judgment and will DENY the Plaintiffs' Motion to Join Additional Parties.

**I.      FACTS.**

**A.      The Seizure.**

Kentucky State Police officers arrived at the Plaintiff Anthony Mayes' house in Mayfield, Kentucky in May 2005 while searching for Anthony's brother, George Mayes, who was suspected of murder. (Rec. No. 1, Complaint, ¶ 13).  The KSP received information that George was at Anthony's house.  (Rec. No. 42, Response, Ex. 1, Uniform Offense Report; Rec. No. 27, Geiger Dep. at 6-7; Rec. No. 29, M. Williams Dep. at 6, 9).  Certain  KSP officers conducted surveillance of Anthony's home to locate the murder suspect and to seize any evidence related to the murder. (Rec. No. 42, Response, Ex. 1, Uniform Offense Report). The KSP officers conducting the

surveillance were George Bell, Sam Steger, Mike Williams, T.J. Williams, Brad Smith and Ray Burhnam. (T. Williams Dep. at 10; Rec. No. 26, Steger Dep. at 7,8; Rec. No. 27, Geiger Dep. at 9; Rec. No. 42, Response, Ex. 1, Uniform Offense Report).  It is undisputed that Captain Humphreys was not present at Anthony's house for the surveillance.  (Rec. No. 28, A. Mayes Dep. at 19).  Captain Humphreys was, at the time of these events, the captain assigned to the KSP Mayfield post. (Rec. No. 30, Humphreys Dep. at 6).

As it started to get dark, one of the officers proposed that they call Anthony's residence to tell him that the KSP wanted to speak with him and that maybe this would "facilitate something happening." (Rec. No. 27, Geiger Dep. at 8-9).  At approximately 7:15 p.m., Captain Humphreys called Anthony's neighbors and asked the neighbor to tell Anthony to call the KSP.  The KSP did not have Anthony's phone number (Rec. No. 42, Response, Ex. 1, Uniform Offense Report; Rec. No. 29, M. Williams Dep. at 18; Rec. No. 28, A. Mayes Dep. at 10).  The officers then observed Anthony and a female begin placing items in the trunk of a car registered to Anthony.  (Rec. No. 42, Response, Ex. 1, Uniform Offense Report; Rec. No. 29, M. Williams Dep. at 18; Rec. No. 32, T. Williams Dep. at 12-13). In his deposition, Anthony testified that he took items from his car to the house and then, from his house, back to his car.  (Rec. No. 28, A. Mayes Dep. at 10). Anthony then left the residence in a car. (Rec. No. 27, Geiger Dep. at 9-10).

Officers Geiger, Brad Smith and Ray Burnham stopped Anthony's car a short distance from his home. (Rec. No. 27, Geiger Dep. at 9-11; Rec. No. 28, A. Mayes Dep. at 11; Rec. No. 42, Response, Ex. 2, Uniform Offense Report). Officer Geiger testified that he had information that at least one murder suspect was at Anthony's residence and that, because the vehicle left the residence shortly after Anthony was notified that the police were coming, the officers believed it was likely

2

that somebody was trying to "flee" the residence. (Rec. No. 27, Geiger Dep. at 11).

Anthony gave the officers consent to search the vehicle he was driving and the officers and Anthony then returned to the residence.  (Rec. No. 27, Geiger Dep. at 11-13; Rec. No. 28, A. Mayes Dep. at 11-12).  Anthony agreed  to allow the officers to search his residence and another vehicle on the premises. (Rec. No. 27, Geiger Dep. at 12-14; Rec. No. 28, Mayes Dep. at 13, 14-15; Rec. No. 29, M. Williams Dep. at 9-10; Rec. No. 42, Response, Ex. 2, Uniform Offense Report).  The officers then searched Anthony's house and the other vehicle. (Rec. No. 42, Response, Ex. 2, Uniform Offense Report; Rec. No. 29, M. Williams Dep. at 12; Rec. No. 27, Geiger Dep. at 14).  When the officers searched the vehicle, they found a safe and a bag.  (Rec. No. 27, Geiger Dep. at 14; Rec. No. 29, M. Williams Dep. at 12; Rec. No. 32, T. Williams Dep. at 18; Rec. No. 42, Response, Ex. 2, Uniform Offense Report).

 The officers  could see a large amount of money in the bag. (Rec. No. 29, M. Williams Dep. at 12-13; Rec. No. 32, T. Williams Dep. at 18; Geiger Dep. at 14-15). Anthony told Detective Williams the money and safe belonged to his mother, the co-Plaintiff Mildred Mayes.  (Rec. No. 29, M. Williams Dep. at 15-17; Rec. No. 28, A. Mayes Dep. at 15-16; Rec. No. 42, Response, Ex. 2, Uniform Offense Report). The troopers were aware that the  DEA and the Pennyrile Task Force had recently made multiple undercover purchases of illegal drugs from George at the home of Mildred Mayes. (Rec. No. 29, M. Williams Dep. at 15-17, 34).

Graves County Deputy Sheriff Jeremy Prince, a canine officer, had his drug dog check the items seized from Anthony's trunk and the dog alerted on both the plastic bag of money and the still unopened safe, the contents of which were not known at the time.  (Rec. No. 42, Response, Ex. 2, Uniform Offense Report & Ex. No. 9, Graves County Sheriff K-9 Usage Report).

3

According to officer Mike Williams, the female at Anthony's residence, Valerie Wade, said that she did not know anything about the money but suspected it was "drug money." (Rec. No. 42, Response, Ex. 3, Uniform Offense Report). With their response to the Motion for Summary Judgment, however, the Plaintiffs attach Wade's affidavit stating that she told the officers that "the money could belong to Mildred Mayes because I knew she didn't keep a checking account and does save money that is kept in a safe at home." (Rec. No. 42, Response, Ex. 4,Wade Aff.).

KSP officer Mike Williams decided to seize the safe and the bag. (Rec. No. 29, M. Williams Dep. at 45). He then spoke with Mildred Mayes via telephone. Mildred stated at least a portion of the money in the safe belonged to her. (Rec. No. 29, M. Williams Dep. at 23). She agreed to drive down that night with a key to the safe. She guessed about $20,000 was in the safe and stated that she and other family members had been saving the money to take a cruise. (Rec. No. 42, Response, Ex. 3, Uniform Offense Report).

At approximately 11:00 that evening, Mildred and four family members arrived at the KSP Mayfield Post. (Rec. No. 42, Response, Ex. 3, Uniform Offense Report; Rec. No. 29, M. Williams Dep. at 32). KSP officers Mike Williams and T.J. Williams were present. (Rec. No. 29, M. Williams Dep. at 30-34, 42). Captain Humphreys was not. (Rec. No. 30, Humphreys Dep. at 55). Mildred opened the safe. (Rec. No. 29, M. Williams Dep. at 32). Mildred told the officers that she took the money from her house and put it in Anthony's car because she felt it was unsafe due to police and burglars. (Rec. No. 42, Response, Ex. 3, Uniform Offense Report).

In her deposition, Mildred testified that she had the safe put in Anthony's car because she knew that officers were going to search her home. (Rec. No. 33, M. Mayes Dep. at 10). She testified that she does not keep money in banks and that the safe and the money in the bag belonged to her.

4

(Rec. No. 33, M. Mayes Dep. at 9-10). She testified that the money in the safe belonged to about six people. (Rec. No. 33, M. Mayes Dep. at 10).   Anthony testified that he feared the police would take the money if they searched his house and this is why he put it in his car.  (Rec. No. 28, A. Mayes Dep. at 16-17). The bag contained $8,039 and the safe contained $24,641.37.  (Rec. No. 42, Response, Ex. 5, Uniform Offense Report– Inventory).

By letter dated June 9, 2005, the Plaintiffs' counsel asked Defendant Captain Humphreys to return the seized items to the Plaintiffs. (Rec. No. 42, Response, Ex. 6). On June 15, 2005, Officer Brent White contacted Special Agent Daren Atkins who requested that White send him a copy of Anthony's case "in order to initiate administrative forfeiture proceedings." (Rec. No. 42, Response, Ex. 13, Uniform Offense Report). Officer White was the DEA liaison for the KSP Mayfield post. In that position he communicated with the DEA office in Madisonville, Kentucky regarding drug investigations and property forfeiture cases.  (Rec. No. 31, White Dep. at 7).

On June 21, 2005, a cashier's check payable to the United States Marshall's service for $33,660.37, the amount of cash seized, was given to the DEA for "adoptive forfeiture proceedings." (Rec. No. 42, Response, Ex. 8, Evidence/Recovered Property Form). Officer White authorized the transfer of the funds to the DEA.  (Rec. No. 31, White Dep. at 27; Rec. No. 34, Lockwood Dep. at 8-13).

By letter dated June 27, 2005, Captain Humphreys informed the Plaintiffs' counsel that the KSP no longer had the money seized from Anthony and that "the funds are now in possession of the Drug Enforcement Administration."  Captain Humphreys stated the name and number of the DEA agent that the Plaintiffs could contact about the funds.  (Rec. No. 30, Humphreys Dep., Ex. 4).

Mildred testified that she told the DEA that the money belonged to her but the only thing they

sent her was a deed that was in the safe. (Rec. No. 33, M. Mayes Dep. at 12). She testified that she told the DEA that she was saving to go on a cruise and that the she gets an income tax return every year. (Rec. No. 33, M. Mayes Dep. at 12-13). She testified that she received approximately $6,000 in 2004 and $4,000 in 2003 in federal income tax returns and that she had saved at least $50 a week for seven years. (Rec. No. 33, M. Mayes Dep. at 19-20). Neither Plaintiff was ever charged with a drug offense as a result of the search and seizure. (Rec. No. 28, A. Mayes Dep. at 23).

**B.      Dismissal of Certain Claims.**

The Plaintiffs filed their initial Complaint against the Commonwealth of Kentucky, "its agencies and employees" and "unnamed defendants and local governments." The Plaintiffs stated that they filed the action "on behalf of individuals who have not been arrested for drug offenses and/or suspected of drug activity who have had their property unrelated to drug transactions and/or drug activity improperly confiscated and seized." (Rec. No. 1, Complaint, ¶ 7).

Plaintiffs asserted claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 and asked for an injunction requiring that the Commonwealth and its agencies, the Western Kentucky Drug Task Force, the Kentucky Courts Of Justice and the local and municipal law enforcement agencies cease seizing and confiscating personal property of the Plaintiffs and other class members that is not connected to drug law violations; and an Order directing the Commonwealth to return the Plaintiffs' property to them. The Plaintiffs also asked for damages to compensate them for the deprivation of the use, access, enjoyment and possession of their property. (Rec. No. 1, Complaint, ¶ 16). The Plaintiffs also asserted that the Defendants conspired to deprive them of their personal property. (Rec. No. 1, Complaint, ¶ 18).

The Commonwealth, the Kentucky Court of Justice, and the state Commonwealth Attorneys

6

and the County Attorneys moved to dismiss the initial complaint (Rec. No. 5, Motion to Dismiss). The motion pointed out that, while only the Commonwealth and "its agencies and employees" and certain "unnamed Defendants and Local Governments" were named as Defendants in the initial Complaint and only the Commonwealth was actually served with a copy of the Complaint, the Complaint mentioned the COJ and the Commonwealth Attorneys. Thus the Motion stated it was brought on behalf of the Commonwealth, the COJ, and the Commonwealth Attorneys and the County Attorneys to the extent each may be considered Defendants in the action.

The moving parties asserted that, under the Eleventh Amendment, the Commonwealth and its agencies are immune from suit regardless of the relief sought. The moving parties also asserted that, to the extent that Plaints sought to assert claims against the Commonwealth Attorneys and County Attorneys, any such claim must be dismissed because the Complaint does not allege that these state prosecutors undertook any unlawful or unconstitutional actions. Finally, the moving parties assert that any Complaint against the prosecutors must be dismissed because of Eleventh Amendment and prosecutorial immunity.

The Plaintiffs then filed an Amended Complaint (Rec. No. 8), naming the Commonwealth, the Kentucky State Police, the COJ, Captain Stephen (Steven) Humphreys, "individually, severally and jointly And its agencies and employees," and "unnamed Defendants and Local Governments." (Rec. No. 8).

On January 31, 2006, this Court entered an order dismissing any claim against the Commonwealth and its agencies and the COJ pursuant to the Eleventh Amendment. The Court also dismissed any claim, to the extent that Plaintiffs intended to make such a claim, against the County Attorneys and Commonwealth Attorneys, in either their individual or official capacities.

7

Accordingly, the sole named defendants remaining in this action are the Kentucky State Police and Captain Humphreys in his individual capacity.  These Defendants now move for summary judgment. The Amended Complaint also asserted claims against "Unnamed Defendants and Local Governments."

      **II.**    **Motion for Summary Judgment.**

      **A.**    **Standard.**

Under Fed. R. Civ. P. 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim.  *Id.* at 322-25.  Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of

the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must view the facts and draw all inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The moving party must show conclusively that there is no genuine issue of material fact. *Id.* However, at the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249). The Court is not to judge the evidence or make findings of fact. *60 Ivy Street Corp.*, 822 F.2d at 1435-36. Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

"The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). "The nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris,* 260 F.3d 654, 665 (6th Cir. 2001).

9

**B.     Analysis.**

Plaintiffs argue that the property in Anthony's car was illegally seized and transferred to the

DEA instead of being returned to Mildred.  The Plaintiffs seek the following relief:

> 1) an injunction preventing the Kentucky State Police and Captain Humphreys from
> seizing the personal property of the Plaintiffs and the class members if the property
> is not connected to the violation of drug laws and from transferring that property to
> another state or federal agency without due process of law and legal authority;
>
> 2) an order directing the Defendants to return the seized property to the Plaintiffs;
> and
>
> 3)  compensatory and punitive damages.

(Rec. No. 8, Amended Complaint ¶ 18).

As to the Plaintiffs' request for damages against the remaining named defendants, Captain

Humphreys cannot be liable in his individual capacity for these damages because it is undisputed that

he was not present when the property was seized and that he had nothing to do with the transfer of

the property to the DEA.  It is true that Humphreys was a KSP captain.  However,  "[r]espondeat

superior is not a proper basis for liability under § 1983." *McQueen v. Beecher Community Schools*,

433 F.3d 460, 470 (6th Cir. 2006). Nor can the liability of supervisors be based solely on the right to

control employees or simple awareness of employees' misconduct. *Id*. "Furthermore, a supervisory

official's failure to supervise, control or train the offending individual is not actionable unless the

supervisor either encouraged the specific incident of misconduct or in some other way directly

participated in it." *Id*. (quotations and citation omitted). At a minimum a plaintiff must show that the

supervisor "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional

conduct of the offending officers." *Id*. (citation omitted).  Plaintiffs have produced no evidence that

Captain Humphreys encouraged, authorized, or directly participated in the seizure of the property

10

or in its transfer to the DEA.

As for the KSP, as a state agency, it is immune from suit for damages or injunctive relief. *See Barnes v. Hamilton*, 946 F.2d 894, 1991 WL 203113, at *2 (6th cir. 1991); *McDonald v. Kentucky State Police*, 2005 WL 1917238, at *1 (E.D. Ky. 2005).

As for the Plaintiffs' request for an injunction ordering Captain Humphreys to return the property to them, it is undisputed that neither Captain Humphreys nor the KSP have the property any longer.  In fact, Captain Humphreys is no longer employed by the KSP. (Rec. No. 30, Humphreys Dep. at 5).   Accordingly, the Court cannot grant this relief.

The final remedy sought by the Plaintiffs is:

> an injunction preventing the Kentucky State Police and Captain Humphreys from seizing the personal property of the Plaintiffs and the class members if the property is not connected to the violation of drug laws and from transferring that property to another state or federal agency without due process of law and legal authority.

The Court cannot enter this broad relief for several reasons.  As explained above, the KSP is immune from suit for injunctive relief.  As to Captain Humphreys, he is no longer employed by the KSP so the Court cannot enter an order preventing him from taking actions as a KSP captain. In addition, the Plaintiffs have never requested that a class be certified in this action and the court has not otherwise certified a class in this action. Finally, the Plaintiffs have not demonstrated that there are no legitimate non-drug related justifications for seizure of property.  For example the KSP would certainly be entitled to seize a gun where they had probable cause to believe it was used in a murder yet the requested injunction would prevent it from doing so.

For all these reasons, the Court will dismiss all claims against the KSP and Captain Humphreys.

### III.      Motion to Join Parties.

On May 14, 2007, after the Defendants' Motion for Summary Judgment had been fully

briefed, the Plaintiffs filed a "Motion to Join Party Defendants" under Fed. R. Civ. P. 19.  In the

motion, the Plaintiffs assert that they have learned from discovery in this action that certain officers

took part in the alleged wrongful seizure of the Plaintiffs' property and its transfer to the DEA.

Specifically, the Plaintiffs appear to request to join KSP officers Mike Williams, Brent White,

William Lockwood, T.J. Williams, Jay Geiger, Nathan Kent, and Sam Steger as defendants in this

action.

As the Defendants point out in their response, the problem with joining these defendants at

this point in this case is that the statute of limitations for a § 1983 claim based on the seizure expired

on May 22, 2006.  The seizure occurred on May 22, 2005.  The statute of limitations for a  § 1983

claim in Kentucky is one year.  *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996).

With their motion, the Plaintiffs seek to either add defendants to their complaint or to

substitute parties for the "unnamed defendants."  Either way, in order to do so after the statute of

limitations has run, they must meet the requirements of  Rule 15(c)(3)(B).  *Id*.  ("[s]ubstituting a

named defendant for a 'John Doe' defendants is considered a change in parties, not a mere

substitution of parties.  Therefore the requirements of Fed. R. Civ. P. 15(c) must be met in order for

the amendment adding the named defendant to relate back to the filing of the original complaint);

*Neptune Fireworks Co., Inc. v. Ahern*, 1995 WL 311395, at *2 n. 6 (N.D.Ill. 1995)(even if proposed

defendants are necessary parties, plaintiff's cause of action against them is still subject to the statute

of limitations and Rule 15(c)(3) governing relation back).

Rule 15(c) provides that, where an amendment changes the party or the naming of the party

against whom a claim is asserted, the amendment "relates back" to the date of the original pleading only when the party to be named by the amendment "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." Fed. R. Civ. P. 15(c)(3)(B). "Sixth Circuit precedent clearly holds that new parties may not be added after the statute of limitations has run, and that such amendments do not satisfy the 'mistaken identity' requirement of Rule 15(c)(3)(B)." *Cox*, 75 F.3d at 240.

It is clear in this case that the Plaintiffs' failure to name the proposed defendants before the statute of limitations ran was not due to "mistaken identify." The Plaintiffs do not claim to ever have believed that Captain Humphreys was the officer who seized the property at issue.

In addition, even if the statute of limitations had not run, the proposed additional defendants are not necessary parties to this action. The Plaintiffs' sole grounds for joinder of the proposed defendants is that they each "took an integral and material part in the Plaintiffs being wrongfully deprived of their personal property." However, "a person's status as a joint tortfeasor does not make that person a necessary party, much less an indispensable party." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 204 (6th Cir. 2001); Fed. R. Civ. P. 19, advisory committee's note (1966 amendment)("a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another of like liability). Likewise, a party jointly and severally liable on a § 1983 claim is merely a permissive party in an action against a person of like liability. *See Weeks v. Chaboudy*, 984 F.2d 185, 188-89 (6th Cir. 1993)(defendants on § 1983 claim are jointly and severally liable for damages).

The proposed additional defendants are certainly not indispensable to this action. A party is "indispensable" to an action only if the party is both necessary under Rule 19(a) and his joinder is not feasible either because the court does not have personal jurisdiction over the party or because

13

the joinder of the party would destroy the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 19(b); *PaineWebber,* 276 F.3d at 200-01. If a party is indispensable, i.e., necessary but impossible to join in the action, the action must be dismissed. Because the proposed additional defendants are not necessary to this action, they cannot be indispensable. Further, the Plaintiffs have never even asserted that the joinder of the proposed additional defendants is not feasible.

For these reasons, the Motion to Join Party Defendants will be DENIED.

**IV.    CONCLUSION.**

For all these reasons, the Court hereby ORDERS as follows:

1)    the Defendants' Motion for Summary Judgment (Rec. No. 25) is GRANTED;

2)    the Plaintiffs' Motion to Join Party Defendants (Rec. No. 45) is DENIED; and

3)    this matter is STRICKEN from the active docket of this court.

This 28th day of September, 2007.

**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**